# UNITED STATES DISTRICT COURT

## DISTRICT OF COLUMBIA
## CIVIL DIVISION

SOLON PHILLIPS,                              *
4729 1st Street, S.W., #303
Washington, DC 20032                         *
202-329-1799
solonesq@gmail.com                           *

     Plaintiff,                              *

v.                                           *

COMMISSION ON CHARACTER                      *
& FITNESS
                                             *
AND
                                             *
ANNIE GOODWIN
33 S. Last Chance Gulch                      *
Suite 1B
Helena, MT 59624                             *
406-447-2204
                                             *
     Defendants.

Case: 1:20−cv−01982  JURY DEMAND
Assigned To : Kollar−Kotelly, Colleen
Assign. Date : 7/21/2020
Description: Other Civil Rights (L−DECK)

**COMPLAINT**

**JURY DEMANDED**

## COMPLAINT AND REQUEST FOR INJUNCTION

    *The bar's moral character requirement is "a vague qualification, which can be easily adapted to fit personal views and predilections, [and] can be a dangerous instrument for arbitrary and discriminatory denial of the right to practice law." ----Konigsberg v. State Bar of Cal., 353 U.S. 252, 263-64 (1957).*

**INTRODUCTION**

Solon Phillips visited the great state of Montana in 2017. In 2018, Solon Phillips applied to the Montana bar with hopes and dreams of one day moving to Montana and practicing law. So in February 2018, Solon took and passed the Uniformed Bar Exam. He scored high enough on the exam to be admitted into the Montana Bar, and so he did what he set out to do after he visited this great state—he applied for admission to become a lawyer licensed to practice in the great state of Montana.

What seemed to be an easy, ordinary application process, turned out being more of a twisted nightmare taken from an Alex Haley book. In early 2019, Solon received notice from the Montana Bar that he was being denied admission. The reason he was given for denying him admission was that he lacked the requisite character for admission.

But this reason did not make any sense. Solon is *46-years old African-American* man with no history of any criminal arrests or convictions. Solon has no history of being terminated from any of his jobs that he's held in the past 30 years. He has no disciplinary actions against him in any year of his 23-years of schooling. He has never used drugs or alcohol. He has never been accused of defrauding anyone out of money. On the contrary, he has received awards for outstanding community services for the past 26-years of his life, raised two children as a single father, and has a record of being quite the philanthropist. And even more than that, he has been admitted into *three other bar jurisdictions*. Why would Montana deny Solon admission into their Bar on the basis of poor moral character?

*The bar's moral character requirement is "a vague qualification, which can be easily adapted to fit personal views and predilections, [and] can be a dangerous instrument for arbitrary and discriminatory denial of the right to practice law." ----Konigsberg v. State Bar of Cal., 353 U.S. 252, 263-64 (1957).*

The Montana State Bar Commission on Character and Fitness refuses to admit Solon into their Bar, but they have been kind enough to afford Solon a hearing—an "adversarial" hearing in which they are both the plaintiff and jury.  Unless this Court steps in and referees this saga, Solon Phillips will walk into a hearing that is set up to be one of the most unconstitutional hearings this country has witnessed in modern history.

In this suit, Plaintiff Solon Phillips is seeking this Court to enjoin the Commission from conducting an adversarial hearing and asking this Court to award him monetary damage for the multiple violations made against him.

**THE PARTIES**

1.     The Plaintiff, Solon Phillips, is a 46-year old, African-American man desiring admission into the Montana bar.

2.     The Defendants are the Montana Commission on Character and Fitness and its Chair, Annie Goodwin desiring that Solon Phillips not be admitted into the Montana bar.

**JURISDICTION**

3.     Pursuant to the All Writs Act, a district court has jurisdiction to enter a preliminary injunction in this case because the facts closely relate to the facts in the contained complaint.  28 U.S.C.A. § 1651(a).

4.     Jurisdiction is proper because (1) the complaint alleges an actual controversy between the parties of sufficient immediacy and reality to warrant issuing a

declaratory judgment, (2) the court possesses an independent basis for jurisdiction over the parties, and (3) Plaintiff's Complaint implicates striking federal issues. 28 U.S.C. § 1331; *Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co.*, 386 F.3d 581, 592 (4th Cir. 2004).

## BACKGROUND FACTS

### Personal

5.    Solon Phillips is a single father who has raised his two children into becoming law-abiding citizens; one being a U.S. Marine and the other a senior in college.

6.    Solon has never used drugs or alcohol.

7.    Solon has maintained a "good" credit score for the past 20 years.

### Community Service

8.    Over the span of 25 years, Solon Phillips has served his community as a men's leader, a mentor, a basketball coach, a deacon, a teacher, a religious liberty leader, and a Bible teacher.

9.    Solon has taught biblical studies to young people and adults for over 20 years.

10.   Solon is the Prison Ministry leader at his church and has spend the last 7 years volunteering his time offering Bible study to incarcerated men.

11.   Solon has drawn on all his service to write an award-winning book, *Colored Water: Marriage, Involuntary Divorce, the Law, and God,* that is being used as a teaching tool in churches and self-help groups across the country.

12.   Solon has a 26-year history of giving his money to charities and churches across the country.

**Strength of His Character**

13. On five separate occasions, five different character committee members interviewed Solon Phillips and found him to possess the requisite character for admission into a state bar.

14. In 2007 and 2017, two different character committee members in Maryland interviewed Solon and found him to be morally fit, one member commenting on his impressive commitment to church and his children.

15. In 2019, the District of Columbia character committee met and interviewed Solon and found him to be morally fit and admitted him into the D.C. bar.

16. In 2019, the Alabama character committee met and interviewed Solon and found him to be morally fit and admitted him into the Alabama bar.

17. In 2020, the Washington State character committee met and found Solon to be morally fit and admitted him into the Washington bar.

18. There are no witnesses to testify that Solon does not have good moral character.

19. In 2019, Solon underwent a forensic psychological test, the Minnesota Multiphasic Personality Inventory-2 and psychological exam designed to detect dishonesty and criminal propensities; "the results of the MMPI-2 RF and in conjunction with the counseling sessions with [the] Evaluator reveal[ed] Mr. Phillips to be well adjusted[,] and it can only be concluded that he is a man predisposed to honesty and integrity."

20. Between 2007 and 2017, over 20 individuals, including a sitting judge, several attorneys, and several pastors testified that Solon possesses high moral standards and is of high moral character.

## PLAINTIFF APPLIES TO THE MONTANA BAR

21. To meet the minimum academic requirement for admission into the Montana bar, Solon completed the academic work necessary to graduate from the American University Washington College of Law in 2008, and holds a *juris doctor* degree.

22. To meet the initial licensure requirement for admission into the Montana bar, Solon passed the Uniform Bar Exam in 2018 with a score of over 266.

23. On June 12, 2018, Solon finalized his application to the Montana Bar.

24. Three months later, Kathie Lynch with the Montana Bar phoned Solon and asked him to submit a list of all the jurisdictions to where he has applied for admission to the Bar.

25. That same day Solon created the requested list in a Word document and mailed it to the Montana Bar at P.O. Box 577, Helena, MT 59624. *See* Ex. 21, copy of Word document and document properties.

26. On November 15, 2018, Solon e-mailed Sean O'Connor and Kathie Lynch giving them an update on his District of Columbia bar application and his past Florida application and included the same list of jurisdictions he had mailed earlier that summer.

27. Solon received notice in May 2019 from Defendants that his application for admission was denied.

28. The reason that Defendants gave to Solon for the denial was that he lacked
    qualities enumerated in Rules Section 2(d) in that he failed to completely respond
    to the SBM Admissions Department by not providing a comprehensive list of
    jurisdictions where he had applied to take the bar exam, and his denial into the
    Maryland Bar.

29. The list that Defendants used as a defense for denying Solon admission is the very
    list he has provided them on two separate occasions.

30. Solon was denied admission into the Maryland bar in 2017.

31. Solon has challenged this ruling and his case currently awaits a ruling by the
    United States Court of Appeals for the Fourth Circuit.

**MONTANA'S MORAL CHARACTER & FITNESS STANDARD**

32. Montana's moral character & fitness rule requires "every applicant for admission
    to the Bar of Montana to be of good moral character and fitness."

33. The Rules require the applicant to prove by clear and convincing evidence that
    he or she is possessed of good moral character and fitness.

34. No applicant will be certified by the Commission, unless such applicant first
    produces satisfactory evidence to the Commission of good moral character and
    an adequate knowledge of the standards and ideals of the profession.

35. The Rules state that the Commission will conduct an independent investigation
    into applicant's character to make a determination if the applicant is "worthy of
    the trust and confident clients may reasonably place in their attorney."

36.     According to the Montana Rules on character, "good moral character" refers to the qualities of "fairness, discreetness, honesty, reasonableness, unquestionable integrity and ability, and willingness to act in accordance with the standards set forth in the Montana Rules of Professional Conduct."

37.     The Rules state that, "a record manifesting a lack of honesty, trustworthiness, diligence or reliability of an applicant *may* constitute a basis for denial of admission." (emphasis added)

38.     The Rules also imply that a record manifesting honesty, a pattern of trustworthiness, diligence and reliability of an applicant must constitute a basis for granting of admission.

## DEFENDANTS DID NOT FOLLOW THEIR OWN RULES

39.     The Defendants did not conduct an independent investigation into Solon's character.

40.     Defendants rejected Solon's evidence to prove his good moral character calling his efforts "unsolicited."

41.     The Defendants did not consider the mountain of evidence of good moral character in Solon's application.

42.     The Defendants have admittedly stated that they are solely relying on Maryland's denial for issuing their own denial, notwithstanding the fact that Maryland's denial is being challenged.

43.     Defendants are ignoring the District of Columbia's acceptance and finding of good moral character.

44.   Defendants are ignoring Alabama's acceptance and finding of good moral character.

45.   Defendants are ignoring the MMPI-2 results.

46.   Defendants are ignoring the 20 character references stating Solon possesses good moral character.

47.   Defendants are ignoring the fact that Solon has no history of unlawful conduct, academic misconduct, no history of making or procuring any false or misleading statements, no misconduct in employment, no acts involving dishonesty, fraud, deceit or misrepresentation, no abuse of legal process, no financial neglect, no neglect of professional obligations, no violations of an order of the court, no current mental or emotional illness or disorder, no drug or alcohol use much less dependency, and no other conduct reflecting adversely upon his character.

48.   When asked if Plaintiff were to be admitted to the 48 remaining states, would Defendants still hold on to Maryland's denial as justification for their own denial—Defendants could not answer that question.

49.   Defendants reason that one single act defines an individual's character, and if it so happens that an applicant committed one act within his/her lifetime, they have the right to use that to deny admission into their bar.

**FACTORS DETERMINING CHARACTER & FITNESS**

50. Every state requires applicants to prove good moral character before admission to the bar.[1]

51. In practice, "good" moral character means the absence of proven "misconduct."[2]

52. The ultimate question for all bar jurisdictions within the United States is "whether the present character and fitness of an applicant qualifies the applicant for admission."[3]

53. The universal purpose for the good moral character requirement is to "protect the public from unethical lawyers."[4]

54. In making this determination of whether an applicant will harm the public by unethical behavior, character committees analyze the life the applicant up until the time the applicant applies for admission.

55. The idea is simple—past conduct predicts future conduct.

56. A 26-year old applicant with a three-year history of criminal behavior is likely to continue in criminal behavior in the future and therefore may not be admitted into a state bar.

57. A 50-year old applicant with no history of criminal behavior is very unlikely to begin to exhibit criminal behavior at age 50 and would likely be admitted into a state bar.

---

[1] *See* Nat'l Conference of Bar Exam'rs & Am. Bar Ass'n Section of Legal Educ. & Admissions to the Bar, Comprehensive Guide to Bar Admission Requirements 6-7 chart II (2007).
[2] *Konigsberg v. State Bar of Cal.*, 353 U.S. 252, 263 (1957).
[3] *See* NCBE Guide.
[4] *See* Model Code of Professional Responsibility EC 1-2 (1982).

58.     Every state jurisdiction has a rehabilitation provision within its admissions

        process.[5]

59.     The rehabilitation process requires that problem applicants prove that they are

        fully rehabilitated and possess present good moral character.

60.     "For bar fitness purposes, rehabilitation is the reestablishment of the reputation

        of a person by his or restoration to a useful and constructive place in society."[6]

61.     When denied on character, an applicant bears the burden of showing to the

        Character Committee his good character and being offered the opportunity to

        present proof of restoration.

62.     Defendant found that Solon Phillips committed an immoral act in 2015 by

        signing his father's name to a letter, and that act forever defines his character—so

        much so that rehabilitation is not possible.

## THE COMING "ADVERSARIAL" HEARING

63.     The Rules governing character and fitness allow for a "hearing" if an applicant is

        denied admission based on character.

64.     Unlike the other jurisdictions in the United States, Montana does not define the

        type of hearing, but rather just states a "hearing."

65.     Defendants interpret this hearing to be an adversarial hearing.

66.     The Montana Commission on Character and Fitness has hired an attorney to

        represent it against Solon Phillips.

---

[5] *See* Maureen M. Carr, *The Effect of Prior Criminal Conduct on the Admission to Practice Law: The Move to More Flexible Standards*, 8 Geo. J. Legal Ethics 367, 382-83 (1995)
[6] *In re Cason*, 294 S.E.2d 520, 522-23 (Ga. 1982).

67.   The Commission has scheduled a hearing in which its hired attorney will help "convince" it of its already determined denial.

68.   At this "adversarial" hearing, the Commission is both the Plaintiff and the jury.

69.   Solon Phillips is given the task of defending his character against the Commission while at the same time persuading the same Commission to not do what they have already decided to do.

70.   The Commission, however, rejects proof or evidence that Solon submits in support of his good character.

71.   For example, during the discovery phase of this "adversarial hearing," Solon provided Defendants with a list of over 10 people, one person he met while in Montana, who would and could vouch for his exceptional good moral character and provide specific examples in which he has exhibited good moral character for decades.

72.   When asked if Defendants contacted any of the individuals, Defendants said no, because the character references were "unsolicited."

73.   During the discovery phase, Solon has no neutral party to compel discovery.

74.   Even if Defendants want to use Maryland's denial in considering Solon's character, the Rules require them to take into consideration the applicant's age at the time of the conduct and the recency of the conduct, the reliability of the information concerning the conduct, the seriousness of the conduct, and the factors underlying the conduct.

75.     Defendants are not following their own rules because they reject Solon's age and
        their own rehabilitation provision.

76.     Maryland's denial was based on an incident that took place in May 2013.

77.     After the May 2013 incident, Solon enrolled in professional responsibility
        courses.

78.     After the May 2013 incident, Solon passed the exam for professional
        responsibility — twice.

79.     After the May 2013 incident, Solon secured Paul Sandler, the top attorney in
        Maryland as a mentor.

80.     After the May 2013 incident, Solon continued his devotion to his church, winning
        an award for social service and being named the new Prison Ministry leader.

81.     But the Commission does not want to admit Solon into the Montana Bar.

82.     "The bar's moral character requirement is a vague qualification, which can be
        easily adapted to fit personal views and predilections, and can be a dangerous
        instrument for arbitrary and discriminatory denial of the right to practice law."
        *Konigsberg v. State Bar of Cal.*, 353 U.S. 252, 263-64 (1957).

## CLAIM FOR INJUNCTIVE RELIEF I
### Due Process Violation: Denial of Fair Trial

83.   Plaintiff incorporates and alleges the averments contained in all paragraphs
      above by reference.

84.   Obtaining preliminary injunctive relief is proper because (1) Plaintiff's complaint
      has a substantially high likelihood of being successful on the merits, (2) if
      Defendants are not enjoined Plaintiff will sustain an irreparable injury, (3) given
      the nature of the suit, there is a lack of substantial injury to other interested
      parties, and (4) the public interest is definitely furthered by issuing an injunction.
      *See CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 746 (D.C. Cir. 1995).

85.   A fair trial in a fair tribunal is a basic requirement of due process. *In re
      Murchison*, 349 U.S. 133, 135 (1955).

86.   Due process requires a fair trial before a judge without actual bias or an interest
      in the outcome of a particular case. *Bracy v. Gramley*, 520 U.S. 899, 899 (1997).

87.   One has two chances of getting a fair trial at a hearing where one party is both
      the plaintiff *and* the judge: a slim chance and a fat chance.

88.   Here, Plaintiff Solon Phillips is scheduled to appear before the Montana
      Commission on Character and Fitness in what the Commission has decided will
      be an "adversarial hearing."

89.   In that hearing, the Commission is the plaintiff because the Commission is
      bringing that case that Solon Phillips does not possess the requisite character to
      admission into the Montana Bar.

90.   The defendant is Solon Phillips because he is defending his good character.

91.   The Commission is the trier of fact because the Commission controls the hearing and will make the final decision.

92.   The Commission has hired Mike Fanning to represent them *and* convince them to do what they have already decided they want to do.

93.   During discovery, the Commission is refusing to answer interrogatories and produce documents propounded by Solon Phillips.

94.   Solon has no one to compel discovery.

95.   The Commission controls every aspect of this adversarial hearing.

96.   Because the Rules do not define "hearing, " the Montana Rules on Character on Fitness must specify that the allowed hearing for applicants who have been denied based on character is a *show cause hearing*.

97.   As they stand now, the Rules on their face are unconstitutional.

98.   Because of the unconstitutional provision of the Montana Rules on Character and Fitness, Solon is wrongfully being denied due process.

99.   This wrongful denial has caused Solon damage and injury in that he is not allowed to practice law in Montana.

100.   This damage is calculated to be at least $200,000.00, the salary he would have made had the Commission not violated his due process rights in 2018.

101.   For this reason, Plaintiff asks this Court to enjoin Defendants from moving forward with the unconstitutional hearing and award him $200,000.00.

## CLAIM FOR RELIEF II
### Violation of Montana Human Rights Act (MHRA)

102. Plaintiff incorporates all of the above paragraphs herein.

103. Montana law allows for an individual the right to be free from discrimination because of race.  Mont. Code Ann. § 49-1-102(1).

104. Montana has the smallest African-American population (as well as the lowest percentage) of all the states in the Union.

105. The state of Montana has two African-American attorneys.

106. Solon Phillips has undergone *five* character interviews and investigations, and all five have determined that Solon Phillips possesses the requisite character to be licensed as a practicing attorney.

107. The Montana Commission on Character and Fitness is the only character committee that has found Solon to be lacking in character.

108. Solon Phillips is African American.

109. The Commission's finding that Solon Phillips lacks the requisite moral character for admission into the Montana Bar is arbitrary and irrational because five other jurisdictions with the exact same character criteria have found that Solon possesses the requisite moral character.

110. Such a finding screams that the decision is based on race and not character.

111. Because of the Commission's finding, Solon is not free from discrimination because of race.

112. Therefore, Plaintiff demands that this Court find that Defendants have violated state law and award Solon Phillips damages of $200,000.00.

## CLAIM FOR RELIEF III
### Civil Conspiracy

113.  Plaintiff incorporates all of the above paragraphs herein.

114.  Civil conspiracy consists of four elements: (1) an agreement between two or more persons, (2) to participate in an unlawful act, and (3) an injury caused by an unlawful overt act performed by one of the parties to the agreement (4) pursuant to, and in furtherance of, the common scheme. *Executive Sandwich Shoppe, Inc., v. Carr Realty Corp.*, 749 A.2d 724 (D.C. 2000).

115.  A claim for racial discrimination under a state Human Rights Act is sufficient to serve as an underlying tortious act. *Id.*

116.  Here, the members of the Commission have conspired to commit racial discrimination by wrongfully denying Solon Phillips certification to be admitted into the Montana Bar.

117.  Solon has no record in 46 years of living of immoral behavior.

118.  No witnesses have testified that Solon lacks the requisite moral character for admission into any bar jurisdiction.  On the contrary, over 20 witnesses have testified that Solon possesses the requisite character for admission into any bar jurisdiction.

119.  Therefore, Plaintiff demands that this Court find that Defendants and its body of members have conspired to commit civil, tortious actions against Solon Phillips and award him $200,000.00 in actual damages.

## CLAIM FOR RELIEF IV
### Violation of Civil Rights § 1982

120.    Plaintiff incorporates all paragraphs above herein.

121.    Defendants have violated Solon Phillips's civil rights because they are preventing him from enjoying a Montana law license to lawfully practice law in that state.

122.    All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to hold personal property.  42 U.S.C. § 1982.

123.    The practice of law is a matter of right for one who is qualified by his learning and moral character.  *Bair v. State Bar of Arizona*, 401 U.S. 1, 7 (1971).

124.    Defendants, through the wrongful and unconstitutional application of the Montana Rules on Character and Fitness, have wrongfully denied Solon the right and privilege to practice law in Montana.

125.    This wrongful denial has damaged Solon in the amount of $200,000.00.

## CLAIM FOR RELIEF V
### Equal Protection Clause of the Fourteenth Amendment Violation

126.    Plaintiff incorporates all of the above paragraphs herein.

127.    A State cannot exclude a person from the practice of law or from any other occupation in a manner or for reasons that contravene the Due Process or Equal Protection Clause of the Fourteenth Amendment.  *Schware v. Bd. of Bar Examiners of State of N.M.*, 353 U.S. 232, 239 (1957).

128.   "Obviously, an applicant could not be excluded merely because he is a Negro."

       *Id.*

129.   Even in applying permissible standards, officers of a State cannot exclude an

       applicant where there is no basis for their finding that he fails to meet good

       moral character standards or when their action is invidiously discriminatory. *Id.*

130.   Here, Defendants have no rational basis for finding that Solon has failed to meet

       his burden of proving his good moral character.

131.   When Solon provided a list individuals, along with their contact information,

       Defendants rejected the list as "unsolicited" evidence.

132.   Defendants' own rules require applicant to "prove" his own character.  By

       rejecting Solon's attempt to prove his good moral character and labeling it as

       "unsolicited" Defendants proved its actions to be "invidiously discriminatory."

       *Id.*

133.   Because of Defendants' actions, the Commission has deprived Solon of due

       process in denying him the opportunity to qualify for the practice of law in

       Montana.

134.   This deprivation has caused Solon actual damages in the amount of $200,000.00.

                                   CONCLUSION

       The year 2020 has been an eye-opening year for the people of the United States,

indeed, the entire world.  In this year, the hideous face of racial injustice is being

unmasked.  The country, as a whole, is fighting towards racial equality—one way or

another.  Trademarks and logos reflecting flagrant racism are being retired.  Statues

reminiscent of racial oppression are coming down.  More and more people of all races and across the world are coming together, on bended knee, in recognition of the racial injustice that is plaguing this great country.

Plaintiff asks this Court to join in with the world and take down a state provision that is "a vague qualification, which can be easily adapted to fit personal views and predilections."  Plaintiff asks this Court to bury a state provision that is, "a dangerous instrument for arbitrary and discriminatory denial of the right to practice law." Plaintiff asks this Court to use the authority given to it to help the arc of the universe bend a bit more toward justice.

*I declare under penalty of perjury that the foregoing is true and correct. Executed on July 17, 2020.*

Solon Phillips, Pro se
4801 Bartletts Vision Drive
Bowie, MD 20720
solonesq@gmail.com
202-329-1799